# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| JAMES B. HEARNS, JR., | * | Case No. 1:02cv00496 |
| Plaintiff | * | Judge Bertelsman |
| vs. | * | |
| JEFF WYLER FAIRFIELD, *et al.*, | * | **DEFENDANTS' MOTION** |
| | | **FOR SUMMARY** |
| Defendants. | * | **JUDGMENT** |

Now come defendants, by and through the undersigned counsel, to move this Court for an order, pursuant to Fed.R.Civ.P.56(c), dismissing plaintiff's claims for the reason that, considering the evidence now of record in the light most favorable to plaintiff and drawing all justifiable inferences in plaintiffs' favor, no material issues of fact exist with regard to plaintiffs' claims and that the defendants are entitled to judgment as a matter of law. A memorandum in support of this motion is attached hereto.

Respectfully submitted,

**s/Donald W. White**

Donald W. White, Bar No. 0005630
Trial Counsel for Defendants
Nichols, Speidel & Nichols
237 Main Street
Batavia, Ohio 45103
(513) 732-1420  Fax 732
E-mail: dww.nicholslaw@fuse.net

**s/ H. Elizabeth Mason**

H. Elizabeth Mason, Bar No. 0051967
Nichols, Speidel & Nichols
237 Main Street
Batavia, Ohio 45103

**MEMORANDUM IN SUPPORT**

**I. FACTS**

Plaintiff James R. Hearns is an African-American male who was initially employed by defendant Jeff Wyler in 1996. Hearns was hired to sell automobiles at the Wyler Cadillac-Oldsmobile dealership in Fairfield, Ohio. Plaintiff, in his deposition, admitted that he falsified his application in order to obtain employment with Wyler. See deposition of James R. Hearns at pages 31 through 33 (hereinafter "Dep.Witness, p._").

During the first years of his employment plaintiff had difficulties with two co-workers, defendants Duncan Riddle and Bill Flynn. *Id.*, p. 51. Indeed, according to plaintiff these two men, who engaged in various types of harassing misconduct, including name calling and racially-based pranks, were the only two people that caused him difficulties in this regard. *Id.*

On September 30, 1999 plaintiff's attorney wrote a letter directly to defendant Jeff Wyler to make him aware of plaintiff's complaints. *Id.*, exh. G. Immediately thereafter and because of plaintiff's complaints, Wyler hired an outside investigator to determine the basis of plaintiff's allegations. *Id.*, p.62. In a letter dated October 18, 1999, plaintiff's attorney acknowledged the assignment of the independent investigator and offered any cooperation that might be needed. *Id.*, exh. H.

At the conclusion of Wyler's investigation, defendant Riddle was reprimanded.[1] *Id.*, p.61. Defendant Adomitis was discharged shortly after the investigation was completed. *Id*., p.201. Plaintiff testified in his deposition that after the 1999 investigation and Wyler's remedial actions, the types of racial harassment he described in his complaint, stopped. See Complaint at ¶19; dep.

_____

[1]Defendant Flynn was no longer employed by Wyler at the time of the investigation. Dep.Hearns, p. 57.

Hearns, pp. 71-114. Indeed, plaintiff testified that he was Wyler's "top salesman"–the person who sold the most cars at his dealership--for the years 1997 through 2000. Dep.Hearns, pp.58, 60.

In August 2000, however, plaintiff failed to meet his monthly sales quota. *Id.*, exh. I. He failed again in December 2000, February 2001, March 2001, and June 2001. On August 11, 2001, plaintiff was injured at work when he tripped on a raised floor tile and wrenched his back attempting to retain his balance. Dep.Hearns, pp. 158-59. He asked for and was granted the ability to work a reduced schedule. *Id.*, pp. 166-67. Wyler cooperated with the Bureau of Workers Compensation, and plaintiff received all of the benefits to which he was entitled. *Id.*, pp. 161-62.

On October 6, 2001, plaintiff was suspended from work for three days for his failure to attend a mandatory sales meeting. Plaintiff was diagnosed with depression and never returned to work after his suspension. *Id.*, pp.175-76. In May, 2002, defendant Wyler formally terminated plaintiff's employment because, pursuant to company policy, he had failed to return to work after six months' absence. Plaintiff claims he had to "fight" for his disability benefits, although he testified that "[t]o be honest, Steve [Baxla] tried to help as much as possible, I guess." Dep.Hearns, p.177. Plaintiff does not dispute that he received both short-term and long-term disability through Wyler, as well as payment for accrued vacation and back commissions. *Id.*, pp.170-71, 178-80.

Plaintiff testifies clearly in his deposition that the disability he alleges is the depression which arose at the time of his October 6, 2001, suspension, and not the back injury he suffered the previous August. *Id.*, pp.163, 172. Further, plaintiff testified that during the period between

2

October 6, 2001, and May 2002 when Wyler terminated his employment, he was disabled by depression and not his back injury. *Id.*, p.176.

## II. ARGUMENT

### A. Standard of Review for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)(quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The non-moving party "must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Matsushita Elec. Ind. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In reaching its decision, the court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the mon-movant's favor. *United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962).

If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967)(per curiam), or is not significantly probative, *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968), the court may grant judgment. *Anderson*, 477 U.S. at 249-50. The "'mere possibility'" of a factual dispute will not suffice. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

**B. Plaintiff's Claims**

**1. Counts One and Two**

In his first two claims, plaintiff has alleged that he was the victim of discrimination based on his race in violation of both federal and state. He claims, too, that after he made a formal complaint of harassment in 1999, he was the victim of retaliatory misconduct, again in violation of state and federal law. Plaintiff appears, too, to make a claim of a violation of his right to equal protection pursuant 42 U.S.C. §1983, although he fails to name a state actor as defendant.

**a. Race Discrimination**

Plaintiff brings these claims under both federal and state law. The Ohio Supreme Court has held that "it has been our practice, where appropriate, to refer to federal case law interpreting Title VII in our analysis of R.C. Chapter 4112." *Cincinnati Bar Ass'n v. Young*, 89 Ohio St.3d 306, 315, *citing Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St. 2d 192, 196 (12981)("federal case law interpreting Title VII * * * is generally applicable to cases involving alleged violations of R.C. Chapter 4112").

In order to establish a prima facie case of hostile work environment based on either race or religion, a plaintiff must establish the following five elements: (1) he was a member of a protected class; (2) he was subjected to unwelcome racial and/or religious harassment; (3) the harassment was based on race or religion; (4) the harassment had the effect of unreasonably interfering with the plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) (citation omitted); *accord Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462-63 (6th Cir. 2000) (sexual harassment).

4

In this matter plaintiff has asserted his claims against Jeff Wyler, Jeff Wyler Fairfield, Inc., Jeff Wyler Automotive Family, Jeffrey L. Wyler, Steve Baxla, Tony Gomez, Margaret Ingram, Chuck Adomitis, Cary Wallach, Duncan Riddle, and Bill Adkins. In paragraph 10 of his Complaint he states that he "sues each and every individual in their individual capacities and as employee and agents of Defendant Jeff Wyler, Jeff Wyler Fairfield, Inc., and Jeff Wyler Automotive Family."

With respect to the "employer liability" element of a prima facie Title VII case, however, "... an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir.1997). Accordingly, unless plaintiff can demonstrate that the individual coworkers and supervisors whom he has sued are "employers" as defined by 42 U.S.C. § 2000e(b), defendants Steve Baxla, Tony Gomez, Margaret Ingram, Chuck Adomitis, Cary Wallach, Duncan Riddle, and Bill Adkins cannot, as a matter of law, be found to be liable to him for violations of Title VII.

In *Hafford v. Seidner* the Sixth Circuit held that employer liability for co-worker harassment is based directly on the employer's conduct. 183 F.3d 506, 513 (6th Cir.1999), *citing Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 804 n.11 (6th Cir. 1994). "An employer is liable if it 'knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.'" *Id.* at 804, *quoting Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 621 (6th Cir. 1986), *cert. denied*, 481 U.S. 1041 (1987), abrogated in irrelevant part, *Harris v. Forklift Systems, Inc*., *supra.*

The Sixth Circuit has held further that

5

> when the allegations of ... harassment involve a coworker and the
> employer has fashioned a response, the employer will only be
> liable "if its response manifests indifference or unreasonableness
> in light of the facts the employer knew or should have known. The
> act of discrimination by the employer in such a case is not the
> harassment, but rather the inappropriate response to the charges of
> harassment." Thus, an employer who implements a remedy "can
> be liable for sex discrimination in violation of Title VII only if that
> remedy exhibits such indifference as to indicate an attitude of
> permissiveness that amounts to discrimination."

*McCombs v. Meijer, Inc*., 395 F.3d 346, 353 (6th Cir. 2005) (quoting *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 873 (6th Cir. 1997)). The employer's response will be considered inadequate "'only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination.'" *McCombs*, 395 F.3d at 353 (quoting *Blankenship*, 123 F.3d at 873).

For purposes of this motion, defendants do not dispute the existence of the first three elements of plaintiff's prima facie case: that he is a member of a protected class, that he was subjected to unwelcome racial harassment; and that the harassment was based on his race.

With respect to the fourth element plaintiff has testified that although he was subject to racial harassment during the first years of his employment he was still the top salesman at Wyler's dealership during 1997, 1998 and 1999. This testimony, plaintiff's own, is inconsistent with proof of the fourth element of a prima facie case, that the harassment had the effect of unreasonably interfering with his work performance.

With respect to the fifth element, employer liability, plaintiff agrees that at the end of 1999, when he finally notified defendant Wyler that his coworkers were engaging in racially harassing misconduct, defendant Wyler immediately hired an independent investigator to explore and evaluate plaintiff allegations. Plaintiff agrees, further, that Wyler took affirmative steps to

6

end the conduct of which plaintiff complained. Indeed, defendant Adomitis lost his job and

defendant Riddle was formally reprimanded. Further, plaintiff agrees that Wyler changed several

sales policies which might have been perceived as discriminatory.

Defendant Wyler is not liable to plaintiff for coworker harassment where he implemented

prompt and appropriate corrective action to end the harassing conduct. Plaintiff himself testified

that after the conclusion of the investigation, until October 2001, "everything was probably

nice."

Where plaintiff has failed to produce evidence in support of two elements of his prima

facie case, defendants respectfully request the court to dismiss plaintiff's claim of race

discrimination based on a hostile environment.

## b. Retaliation

Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), forbids

discrimination against employees for attempting to protest or correct allegedly discriminatory

conditions of employment. *McDonnell Douglas*, 411 U.S. at 796. To support a claim of

retaliatory discharge, a plaintiff must prove: 1) that he engaged in activity protected by Title VII;

2) that he was the subject of adverse employment action; and 3) that there is a causal link

between his protected activity and the adverse action of his employer. *Jackson v. RKO Bottlers*

*of Toledo, Inc*., 743 F.2d 370, 375 (6th Cir. 1984).

In *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790-91 (6th Cir. 2000), this

court held that conduct alleged to have occurred in retaliation for complaints made about a

hostile work environment can not be figured "into the hostile working environment equation,"

because such incidents are not alleged to have occurred "because of [race, "sex" in the

7

original]."

In establishing a causal connection between a plaintiff's protected activity and the adverse employment action, courts frequently look at temporal proximity. Indeed, the Sixth Circuit holds that where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise. *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir.2004), *citing Brown v. ASD Computing Ctr.*, 519 F. Supp. 1096, 1116 (S.D. Ohio 1981) ("where there is no direct proof of a retaliatory motive, retaliation may be imputed if the timing of the retaliatory act is such as to allow an inference of retaliation to arise"), *aff'd sub nom. Brown v. Mark*, 709 F.2d 1499 (6th Cir. 1983); *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir.2000) (noting that there are instances in which "evidence of temporal proximity alone would be sufficient to support" an inference of a causal link); *Parnell v. West*, 1997 U.S. App. LEXIS 12023, No. 95-2131, 1997 WL 271751, **35 at *3 (6th Cir. May 21, 1997) (noting that although "[a] time lag of seven months does not necessarily support an inference of a causal link[,] previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months").

In the matter now before the Court, there is no doubt that plaintiff complained to his employer that he was the victim of racial harassment in 1999. Defendant Wyler undertook to investigate plaintiff's claims and, thereafter, institute remedial policies and procedures as well as discipline offending employees. Plaintiff received a three-day suspension in October 2001, nearly two years after the conclusion of the Wyler investigation. His employment was terminated in May 2002, two and one-half years later. In the interim, there is evidence that plaintiff failed to

meet his month sales quota on more than one occasion, but was permitted to continue in employment. Indeed, plaintiff himself testified that defendant Wyler had been known to use failure to meet the sales quota to discharge employees. Dep. Hearns, p.185 ("any time they wanted to get rid of somebody that was not selling, they could always use that rule.").

Plaintiff did engage in conduct protected by Title VII when he complained to defendant Wyler in 1999. He thereafter suffered an adverse employment action. But he cannot demonstrate, nor is there, a causal link between the first and second elements of his prima facie case of retaliation. For this reason, defendants request this court to dismiss plaintiff's claim that he was the victim of retaliation for engaging in protected activity in violation of Title VII and state law.

**c. Section 1983**

In paragraph 41 of the complaint plaintiff alleges that:

> The conduct of the defendants deprived Plaintiff of equal
> protection of the law in violation of the Fourteenth Amendment to
> the Constitution of the United States and caused Plaintiff to suffer
> the badges of slavery in violation of the Thirteenth Amendment to
> the Constitution of the United States as enforced by Title 42,
> United States Code, Section 1983.

Additional paragraphs, e.g., 42 through 47, repeat but fail to substantiate this claim.

Section 1983 provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress.

In order to state a claim under section 1983, plaintiff must show that one of the

defendants deprived him of a right secured by the Constitution or laws of the United States while acting "under color of state law." *Chapman v. Higbee*, 319 F.3d 825, 833 (6th Cir.2003), *citing Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992).

A § 1983 claim must present two elements: (1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003).  A private actor may be considered a person acting under color of state law (a state actor) if "(1) the deprivation complained of was 'caused by the exercise of some right or privilege created by the state' and (2) the offending party 'acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'" *Id*. at 590-91 (*quoting Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

The Sixth Circuit applies three tests for determining whether private action is fairly attributable to the state: the nexus test, the public function test, and the state compulsion test. *Id*. at 591. The nexus test requires that a sufficiently close relationship exist between the state and the private act or (through regulation or by contract) so that private action may be attributable to the state. *Id.* The public function test requires that the private actor exercise powers that are traditionally reserved to the state. *Id*. And, the state compulsion test requires proof that the state significantly encouraged or coerced the private actor, either overtly or covertly, to take a particular action so that the choice is actually that of the state. *Id*

In the matter now before the court, plaintiff has provided no evidence that proves or even permits an inference that any of the defendants was a "state actor" under any of the three tests cited above. For this reason defendants respectfully request this court to dismiss plaintiff's claim

10

that defendants are liable to him for a violation of 42 U.S.C. §1983.

## 2. Count Three

In his third claim against defendants plaintiff claims that he was the victim of discrimination based on his August 11, 2002, work-related injury in violation of the federal Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213.

In his testimony, however, plaintiff makes it clear that he does not consider his work-related injury to be disabling. See, e.g., dep. Hearns, pp. 124, 163. Further, with respect to his EEOC charge, plaintiff provided no information about a disability or a failure to accommodate.

On November 30, 2001, plaintiff James Hearns filed Charge Number 75100901 (29381) 113001 against defendants with the Equal Employment Opportunity Commission (hereinafter "EEOC"). *Id.*, exh. D. In the charge, he alleged employment discrimination based on race and retaliation for engaging in a protected activity, i.e., filing a previous EEOC charge. Plaintiff received a right to sue letter and on July 8, 2002, filed the complaint now before this Court. In. Count Three of his complaint, plaintiff alleges for the first time that defendants violated rights guaranteed to him under the Americans with Disabilities Act ("ADA"), 42 U.S. C. §12101, *et seq*.

Plaintiff is not entitled, as a matter of law, to make a claim against defendants for a violation of the ADA where his EEOC charge does not mention such violation. A plaintiff's failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a claim brought under the ADA. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Exhaustion of administrative remedies is a condition precedent to an ADA action. *Zipes v. TWA*, 455 U.S. 385, 392-98 (2000). Federal courts do not have jurisdiction of ADA claims unless the claimant

11

explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." *Abeita v. Transamerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir.1998).

The EEOC's regulatory requirement that a claimant's written charge be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of" has two purposes. First, the requirement provides the basis for the EEOC's "attempt to obtain voluntary compliance with the law." Second, these attempts "notify potential defendants of the nature of plaintiff's claims and provide them with the opportunity to settle the claims before the EEOC rather than litigate them." *Id.*

The Sixth Circuit has held that "a complainant need not "attach the correct legal conclusion" to allegations in the charge, "conform to legal technicalities," or use "the exact wording which might be required in a judicial pleading." *Davis v. Sodhexo*, 157 F.3d 460, 463 (6th Cir.1998). Nevertheless, "the facts alleged in the [EEOC] charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim." *Jones v. Sumser Retirement Village*, 209 F.3d 851, 853 (6th Cir.2000).

In his Charge filed with the EEOC plaintiff did not allege the existence of a disability, a failure by defendants to accommodate a disability nor are these charges reasonable expected to grow out of the charges of discrimination based on race. See, *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir.1992). Plaintiff's reference to a doctor's appointment is insufficient to prompt an investigation of a claim of disability discrimination nor put anyone on notice that plaintiff is somehow disabled or that defendants failed to accommodate a disability. Finally, in light of the fact that plaintiff has testified that his back injury was not disabling, he has no claim of a violation of rights pertaining to disability.

Based on the foregoing, defendants respectfully request this Court to find that plaintiff's EEOC charge is insufficient to assert a claim of a violation of the ADA, that plaintiff has, therefore, failed to timely exhaust his administrative remedies with regard to Count Three of his complaint, and dismiss Count Three of plaintiff's complaint for the reason that defendants are, as a matter of law, entitled to judgment in their favor.

**3. Count Four**

In his fourth claim, plaintiff alleges that defendants are liable to him under Ohio employment discrimination law pertaining to the disabled. R.C. 4112.02 addresses unlawful discriminatory practices and provides that it "shall be an unlawful discriminatory practice *** for any employer, because of the *** disability *** of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.02(A).

To establish a prima facie case of disability discrimination under R.C. Chapter 4112, n7 an employee must demonstrate: (1) that he or she was disabled; (2) that the employer took an adverse employment action against the employee, at least in part, because the employee was disabled; and (3) that the employee could safely and substantially perform the essential functions of the job in question despite his or her disability. *Hood v. Diamond Prod., Inc.,* 74 Ohio St. 3d 298 (1996). In the matter now before the court, plaintiff has testified that the work-related injury of August 11, 2001, was not disabling. He cannot prove the first, and doubtless most significant, element of his claim. For this reason, defendants request that the court dismiss plaintiff's state law claim alleging disability discrimination.

13

**4. Counts Five and Six**

These claims were voluntarily dismissed by plaintiff. See Doc. 17.

**5. Count Seven**

In Count Seven of his Complaint, plaintiff alleges that "Defendant Jeff Wyler Fairfield, Inc. and Defendant Baxla and Defendant Jeff Wyler retaliated against Plaintiff for having a legitimate Workers' Compensation claim and suffering an on-the-job injury." Complaint at paragraph 101. As alleged by plaintiff, according to Ohio law, such retaliation is unlawful. Nevertheless, where plaintiff has failed to follow the statutorily provided procedure to obtain his remedy, his claim must be dismissed.

Ohio Revised Code §4123.90 prohibits retaliation against an employee who has made a claim under the Workers Compensation statutes. In relevant part the statute provides as follows:

> No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. Any such employee may file an action in the common pleas court of the county of such employment in which the relief which may be granted shall be limited to reinstatement with back pay, if the action is based upon discharge, or an award for wages lost if based upon demotion, reassignment, or punitive action taken, offset by earnings subsequent to discharge, demotion, reassignment, or punitive action taken, and payments received pursuant to section 4123.56 and Chapter 4141. of the Revised Code plus reasonable attorney fees. The action shall be forever barred unless filed within one hundred eighty days immediately following the discharge, demotion, reassignment, or punitive action taken, and no action may be instituted or maintained unless the employer has received written notice of a claimed violation of this paragraph within the ninety days immediately following the discharge, demotion, reassignment, or punitive action taken.

14

Whether a claim for workers compensation retaliation is brought pursuant to R.C. §4123.90 or common law, a plaintiff is required to follow the employer notice procedures. *Jakischa v. Central Parcel Express*, 106 Fed. Appx. 436, 438 (6th Cir.2004).

On October 11, 2001, plaintiff's counsel wrote a letter to defendant Wyler in which he stated that:

> ... Mr. Hearns' physical disability was the result of an injury which occurred on the job and he has subsequently filed a worker's compensation claim. It is unlawful to retaliate in any manner against an employee who initiates a claim with worker's compensation.

Dep.Hearns, exh. K.

Thereafter, on July 8, 2002, Plaintiff filed this Complaint alleging a violation of Ohio law. July 8, 2002, is, however, more than one hundred eighty days after Defendants received notice of the alleged adverse employment action taken against Plaintiff. Should the court consider the termination of plaintiff's employment on May 2002 to be the "discharge, demotion, reassignment, or punitive action taken" by defendant Wyler, then plaintiff is still unable to pursue a claim for retaliation because he did not provide the required notice within ninety days after the date of his discharge.

Based on the foregoing, defendants respectfully request this court to find that it has no jurisdiction over plaintiff's seventh claim.

**III. CONCLUSION**

Based upon the foregoing statutes and case law and evidence now of record, defendants respectfully request this court to find that no questions of material fact remain to be decided in this matter, hold that defendants are entitled to judgment as a matter of law with respect to each

15

of plaintiff's claims, and dismiss plaintiff's claims in their entirety.

Respectfully submitted,

**s/Donald W. White**

Donald W. White, Bar No. 0005630
Trial Counsel for Defendants
Nichols, Speidel & Nichols
237 Main Street
Batavia, Ohio 45103
(513) 732-1420  Fax 732
E-mail: dww.nicholslaw@fuse.net

**s/ H. Elizabeth Mason**

H. Elizabeth Mason, Bar No. 0051967
Nichols, Speidel & Nichols
237 Main Street
Batavia, Ohio 45103
asw@fuse.net

### CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2005, I electronically filed the foregoing with the Clerk

of Courts using the CM/ECF system which will send notification of such filing to Bryan R.

Perkins, attorney for plaintiff, 119 East Court Street, Suite 314, Cincinnati, Ohio 45202.

**s/ H. Elizabeth Mason**

H. Elizabeth Mason, Bar No. 0051967
Nichols, Speidel & Nichols
237 Main Street
Batavia, Ohio 45103
asw@fuse.net

16