UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES B. HEARNS, JR., | * | Case No. 1:02cv00496 |
| Plaintiff | * | Judge Bertelsman |
| vs. | * | |
| JEFF WYLER FAIRFIELD, *et al.*, | * | DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | * | |
| | * | |

**I. Defendant Wyler provided a prompt, remedial and effective response to plaintiff's claims of race discrimination**.

In the statement of facts set forth in his response to defendant's motion for summary judgment plaintiff describes in detail a series of events, none of them resounding to the credit of those involved, that took place prior to 1999. See, e.g., Plaintiff's Response at sections B., C., D., E., F., G., I., L., M. N., S. Indeed, the bulk of plaintiff's argument in response to defendants' motion for summary judgment is based on the events.

Yet, plaintiff agrees that defendant Wyler was unaware of his complaints until plaintiff's counsel brought them to Wyler's attention. Dep. Hearns, p.119. Thereafter, Wyler instituted a thorough investigation of plaintiff's complaints and took action to resolve them. The incidents detailed by plaintiff in his complaint, his affidavit and his response to defendants motion stopped. Dep. Hearns, pp.71-114. Plaintiff agreed that after November 1999 "everything was probably nice" at the dealership, that everything "died down." Dep.Hearns, pp.88, 131.

According to the Sixth Circuit, "when the allegations of harassment involve a coworker and the employer has fashioned a response, the employer will only be liable 'if its response

1

manifests indifference or unreasonableness in light of the facts the employer knew about or should have known. ...' Thus an employer who implements a remedy 'can be liable for discrimination in violation of Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir.2005) quoting *Blankenship v. Parke Care Centers, Inc*., 123 F.3d 868, 873 (6th Cir.1997). In the case at bar, plaintiff's own testimony demonstrates that defendant Wyler, individually and the corporation, is not liable to him. Defendants therefore request this court to dismiss plaintiff's claims of race discrimination against his employer, defendants Jeff Wyler Fairfield, Inc., Jeff Wyler Automotive Family and Jeffrey L. Wyler.

**II. Defendants Steve Baxla, Tony Gomez, Margaret Ingram, Chuck Adomitis, Cary Wallach, Duncan Riddle and Bill Adkins are not liable to plaintiff for race discrimination.**

**A. Defendants Steve Baxla and Margaret Ingram**

As an initial matter, plaintiff has provided no evidence that defendant Baxla engaged in either racial harassment or disparate treatment at any time during his employment. Next, the only allegations plaintiff has made against defendant Margaret Ingram were for sexual harassment, claims that he formally dismissed. Doc. 17. Further, plaintiff testified that the only problems he had with Margaret Ingram occurred prior to 1999. Dep.Hearns, p.158.

**B. Defendants Chuck Adomitis, Cary Wallach and Duncan Riddle**

With respect to plaintiff's claims against defendants Wallach, Riddle, and Adomitis, assuming plaintiff's descriptions of their misconduct to be true, plaintiff has testified that their misconduct--racial harassment--took place *prior* to the 1999 Wyler investigation. (As set forth above, this is true, too, of defendant Margaret Ingram.) Further, he agrees that these employees

left Wyler's employment by the end of 1999. Whether these employees are characterized as co-workers or supervisors, plaintiff's EEOC charge against them was untimely.

The law in this Circuit is well-settled. The time for filing an EEOC charge is "triggered at the time the alleged discriminatory act occurred." See *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir.1991). Thus, a plaintiff generally may not recover for any employment discrimination that occurred more than 300 days before the filing of an EEOC charge. See *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 46 (6th Cir.1994) ("[A]n aggrieved employee must normally bring a charge within 300 days of the injury; put another way, normally no plaintiff can recover for any employment discrimination that happened more than 300 days before she brings a charge...."). See also 42 U.S.C. §2000e-5(e)(1).

Plaintiff did not file a claim for racial harassment within 300 days of the last incident of such harassment. Indeed, plaintiff's complaints about his employer's and co-worker's conduct after 1999 are characterized as retaliation for making the 1999 complaint. He does not describe a single incident of racial harassment by these defendants that occurred after 1999.

**C. Defendant Tony Gomez**

With respect to defendant Gomez, plaintiff does not allege that he engaged in racial harassment. Indeed, plaintiff testified that Gomez was not a racist. Dep.Hearns, p.147. After repeated questioning, plaintiff admitted that he had no evidence that any of the "harassment" he received at Tony Gomez' hand was based on race. Dep.Hearns, p. 149. Plaintiff complains instead that defendant Gomez failed to respond to plaintiff's complaints of racial harassment.. Gomez might, then, be liable for disparate treatment of plaintiff, but plaintiff has not produced any evidence, even his own testimony, that Gomez took the complaints of white employees

seriously but ignored those of black employees.

### D. Defendant Bill Adkins

Finally, with respect to defendant Bill Adkins, plaintiff does not allege that defendant Adkins engaged in racial harassment. Rather, plaintiff alleges that after he suffered an injury on the job in August 2001[1] and that Adkins "harassed" him about his inability to work. There is no evidence that this harassment was directed at plaintiff because of his race. See *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999)(actionable harassment must be based on race).

Ultimately, to the extent that any of plaintiff's claims against these defendants is timely, none of the named defendants is liable to plaintiff for a violation of Title VII based on a claim of hostile environment or disparate treatment.

### III. Plaintiff has pointed to no causal link between his protected activity and his October 2001 suspension to support a claim of retaliation.

In this matter plaintiff claims that after his 1999 formal complaint to Wyler about racial harassment, he became the victim of retaliation for making such complaints. Plaintiff agrees, however, that defendants Adomitis, Wallach and Riddle were no longer in Wyler's employ by the end of 1999. The defendants who allegedly retaliated against him, then, are defendants Wyler, Baxla, Gomez, Ingram and Adkins.

The Sixth Circuit holds that conduct alleged to have occurred in retaliation for complaints made about a hostile work environment can not be "figured into the hostile working

---

[1] Defendants' counsel has conferred with plaintiff's counsel and the parties are in agreement that plaintiff's sole workplace injury took place in August 2001 and further that plaintiff's references to a 1999 workplace injury, references which appear both in plaintiff's response to defendants' motion and in plaintiff's affidavit (at paragraphs 86 through 89) in support of his response, are the result of a clerical error. Indeed, in his deposition, plaintiff states that in 2001 Adkins was a new employee at Wyler. Dep.Hearns, p. 131.

environment equation," because such incidents are not alleged to have occurred "because of [race, "sex" in the original]." *Morris v. Oldham Count Fiscal Court*, 201 F.3d 784, 790-91 (6th Cir.2000). In order to prove his claim, plaintiff must point to a logical nexus between his protected activity and an adverse employment action. See *Jackson v. RKO Bottlers of Toledo, Inc*., 743 F.2d 370, 375 (6th Cir.1984)(prima facie case requires proof of a causal link between protected activity and adverse action of employer). Accordingly, plaintiff must demonstrate that the misconduct of which he complains that took place in 2000 and 2001 was based on the fact that he instigated an investigation into race discrimination at the Wyler dealership in 1999.

Plaintiff was issued a three-day suspension in October 2001 after which he never returned to employment with Wyler. He describes various incidents of conduct which he characterizes as retaliatory harassment leading up to the suspension. Of interest, however, is the undisputed fact that plaintiff failed to reach his mandatory sales quota in August 2000, December 2000, February 2001, March 2001 and June 2001. Dep.Hearns, exh. I. Plaintiff testified that Wyler frequently "used" employees' failures to make the sales quota as a reason to "get rid" of them. Dep. Hearns, p.185. Clearly, Wyler had five opportunities to terminate plaintiff's employment based on a rule that plaintiff agrees was applied equally to white and black employees. *Id*., p.145. That Wyler forbore to terminate plaintiff's employment for a "legitimate" reason militates strongly against plaintiff's claim that his three-day suspension two years after his complaint of racial harassment was retaliatory.

To be sure, in 1999 around the time of the Wyler investigation Kathy Roberts, a Wyler human resources employee, provided plaintiff with (another) copy of Wyler's sales policy manual which included Wyler's anti-harassment policy. Roberts explained to plaintiff that the

policy was for his protection. Dep.Hearns, p.235, exh.S. Hearns agrees, however, that, Roberts specifically pointed out the anti-discrimination provisions found on pages 1-3. *Id*., pp.57-58. Nevertheless, testified plaintiff, "I had it but I didn't look at it." *Id*. Yet plaintiff claims surprise, shock and retaliatory harassment when his employment was terminated after six months of leave, a policy which is clearly set out in the manual. Dep.Hearns, exh.S, Section 3, page 12. (At the time of Hearns' employment, the policy, which was amended in 2003, permitted an employee to take disability leave for 26 weeks. Plaintiff went on disability leave in October 2001, and his employment was terminated in May 2002.)

     Many of plaintiff allegations of retaliation concern policies which he claim were "changed" and made to apply only to him. It is difficult to understand, however, how plaintiff could draw that conclusion when he admits that he had almost no familiarity with Wyler's policies. For example, plaintiff claims that "[i]n October of 2001, general manager Tony Gomez advised me of an informal policy that only applied to me. Gomez told me that if I if [sic] saw an established customer come into the dealership I could not approach them [sic], or speak to them [sic], unless they [sic] specifically asked for me." Affidavit of James R. Hearns, Jr., at ¶110. The Wyler policy states, however, that in an effort to avoid unseemly battles over established customers, salespeople are advised as follows: "[i]f a customer asks for a salesperson by name and he is not at the dealership and customer is sold by another salesperson, the commission and board credit will be divided 50/50. In all cases an attempt will be made to contact the requested salesperson." Dep.Hearns, exh.C. Clearly any customer who sought plaintiff would be directed to him. Even if plaintiff were not available, he would still be able to profit from his prior relationship with a given customer. Defendant Gomez was attempting to keep plaintiff out of

trouble, not increase his difficulties.

In sum, the record now before the court demonstrates the following: there was no temporal relationship between plaintiff's protected activity in 1999 and his suspension in October 2001; further, Wyler overlooked plaintiff's repeated failures to make his monthly sales quota, conduct for which plaintiff admits he was subject to termination; plaintiff's complaints about the allegedly disparate applicability of Wyler's policies to him result from plaintiff's admitted failure to familiarize himself with the policies.

Defendants are not liable to plaintiff for retaliating against him as the result of his making a complaint of racial discrimination in 1999 and request the court to dismiss plaintiff's claims against them.

**IV. Certain portions of plaintiff's affidavit should be stricken from the record.**

"After a motion for summary judgment has been made, a party may not create a factual issue by filing an affidavit that contradicts her earlier deposition testimony." *Kelso v. City of Toledo*, 77 Fed.Appx. 826, 834 (6th Cir.2003). In the case at bar plaintiff has used his affidavit to attempt to create factual issues and to bring matters before the court irrelevant to his pending claims.

Plaintiff was given numerous opportunities to provide testimony about whether and when he was the victim of a hostile environment based on his race or whether and when he was the victim of disparate treatment because of his race. After the filing of defendants' motion for summary judgment, however, plaintiff provided a lengthy affidavit in support of his response, an affidavit in which he attempts to change facts he testified to in his deposition.

For example, in his deposition plaintiff stated that after 1999 he had no problems with

7

defendant Margaret Ingram. In his affidavit, however, he states that in 2001 she treated him disrespectfully in a way that white salesmen were not treated. Plaintiff attempts further to use his affidavit to revisit the allegations supporting his previously dismissed sexual harassment claim.

Defendants respectfully request the court to strike paragraphs 54 through 65.

It is important to note, too, that the allegations plaintiff makes in paragraphs 86 through 89 are, by agreement of the parties, inaccurate. Plaintiff did not suffer a work-related injury in 1999 although he did suffer one in August 2001. Indeed, in his deposition, plaintiff testified that defendant Bill Adkins was not employed by Wyler in 1999. Dep.Hearns, p.131.

Defendants respectfully request the court to strike paragraphs 86 through 91 of plaintiff's affidavit.

**V. Plaintiff's argument does not support his claim of disability discrimination**.

Plaintiff would have the court accept his argument that an investigation of discrimination based on disability would have grown out of plaintiff's EEOC charge. Plaintiff's argument is that because his disabling depression was caused by defendant's misconduct, his claim grew out of race discrimination. Whether or not this is true is not the issue. The issue is whether, on the face of the EEOC charge, there is language that would put anyone on notice that plaintiff alleged the existence of a disability and the denial of an accommodation for that disability by his employer.

Plaintiff argues, too, that because he filed his EEOC charge without an attorney, the court should give a "broad reading" to his claim. Plaintiff has been represented by the same counsel since 1999. Indeed, plaintiff's counsel was in communication with defendant Wyler at the time the charge was filed. Further, plaintiff testified that he was interviewed by an agent of the EEOC who in fact prepared the charge. Dep. Hearns, p. 63 ("Right, he interviewed me and then he

wrote it.") This hardly entitles plaintiff to anything more than a plain reading of the charge.

Plaintiff's final argument, that he could not have known in November to charge disability discrimination because his employment was not terminated until May is equally unavailing. Plaintiff had the ability to file another charge and he did not.

With respect to his state-law claim of disability discrimination, it is clear that plaintiff's disabling depression did not arise until October 2001, that he was given six-months' paid short-term disability leave and that he received long-term disability through Wyler's policies of insurance. An employee who cannot come to work may be disabled but he is not a "qualified person with a disability" which an employer is required to accommodate for purposes of either state or federal law. Plaintiff's disability is so severe that it cannot be accommodated. This does not support a claim of discrimination in violation of the law.

Defendants are entitled to have plaintiffs claims of unlawful discrimination based on disability dismissed.

### VI. Plaintiff's remaining claims.

As noted above, plaintiff formally dismissed his claims of sexual harassment by defendant Margaret Ingram. Doc. 17. In his response to defendants' motion for summary judgment plaintiff agrees that defendants are entitled to judgment on his claims for violation of 42 U.S.C. §1983. Finally, with respect to plaintiff's claim for workers compensation retaliation, plaintiff does not dispute the facts or law set forth by defendants.

Respectfully submitted,

>> **s/Donald W. White**
>
> Donald W. White, Bar No. 0005630
> Trial Counsel for Defendants
> Nichols, Speidel & Nichols
> 237 Main Street
> Batavia, Ohio 45103
> (513) 732-1420  Fax 732
> E-mail: ddw.nicholslaw@fuse.net
>
> **s/ H. Elizabeth Mason**
>
> H. Elizabeth Mason, Bar No. 0051967
> Nichols, Speidel & Nichols
> 237 Main Street
> Batavia, Ohio 45103
> **asw@fuse.net**

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2005, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to Bryan R. Perkins, attorney for plaintiff, 119 East Court Street, Suite 314, Cincinnati, Ohio 45202.

>> **s/ H. Elizabeth Mason**
>
> H. Elizabeth Mason, Bar No. 0051967
> Nichols, Speidel & Nichols
> 237 Main Street
> Batavia, Ohio 45103
> **asw@fuse.net**