**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAMES HEARNS, JR.,                    *          Case No. 1:02CV496

     Plaintiff,                          *          Judge Bertlesman

         vs.                             *

JEFF WYLER FAIRFIELD, INC.,            *          **DEFENDANTS' PROPOSED**
                                                 **FINAL PRETRIAL**
*et al.*,                                         **STATEMENT**
                                       *
     Defendants.


     Now come Defendants and for their Final Pretrial Statement propose the following.
Proposed Jury Instructions and Special Verdict Forms are attached hereto.

**I.    JURISDICTION**

     The jurisdiction of the court is invoked under Title 42, United States Code, §2000e.

**II.   KIND OF ACTION**

     This is an action for employment discrimination. Plaintiff asserts that he was the victim
of a hostile work environment because of his race based on the conduct of co-workers and/or
supervisors.

**III.  STATEMENT OF FACTS**

     The following facts are established by stipulation of counsel:

     1.  Plaintiff is an African-American male.

     2.  Plaintiff was employed as an automobile salesman by Defendant Jeff Wyler Fairfield,
Inc., from June 1996 through April 2002.

     3.  Much of the work experience and salary history information set forth on Plaintiff's
employment application is untrue.

     4.  Defendant Jeff Wyler Fairfield, Inc., is a corporation organized for the purpose of

1

selling new Cadillac and Oldsmobile vehicles and used vehicles in Fairfield, Ohio.[1]

5.  Defendant Jeffrey L. Wyler is President and Chief Executive Officer of Jeff Wyler Fairfield, Inc.

6.  Defendant Steve Baxla was, at all times relevant to this litigation, employed by Defendant Jeff Wyler Fairfield, Inc., as the Human Resources Director.

7.  Defendant Tony Gomez was, at all times relevant to this litigation, employed in a supervisory position by Defendant Jeff Wyler Fairfield, Inc.

8.  Defendant Margaret Ingram was, at all times relevant to this litigation, employed as a finance manager by Defendant Jeff Wyler Fairfield, Inc.

9.  Defendant Chuck Adomitis was employed by Defendant Jeff Wyler Fairfield, Inc., in a supervisory position through November 1999.

10.  Defendant Cary Wallach was employed as a finance manager by Defendant Jeff Wyler Fairfield, Inc., through October 2000.

11.  By letter dated September 30, 1999, Plaintiff, through his attorney, complained to Jeff Wyler that he had been the victim of race-based discriminatory remarks and pranks by two co-workers, Duncan Riddle and Bill Adkins.

12.  Immediately thereafter, Defendant Jeff Wyler Fairfield, Inc., engaged an outside firm to perform an independent investigation of Plaintiff's claims.

13.  By letter dated October 18, 1999, Plaintiff's counsel acknowledged the assignment of the independent investigator and offered Plaintiff's full cooperation.

14.  In November 1999, at the conclusion of Wyler's investigation into Plaintiff's complaints,  the Human Resources Director for Defendant Jeff Wyler Fairfield, Kathy Roberts, met with Plaintiff to review Wyler's anti-harassment policies and procedures.

15.  As a result of the findings of  Defendant Jeff Wyler Fairfield, Inc.'s investigation, Plaintiff's co-worker Duncan Riddle was reprimanded.

16.  Defendant Adomitis was discharged from employment in November 1999.

17.  In August 2000 Plaintiff received a Disciplinary Report from his supervisor because

---

[1]It is stipulated that named Defendants Jeff Wyler Automotive Family and Duncan Riddle are not proper parties to this litigation and are hereby dismissed.

Plaintiff had failed to meet his sales quota for July 2000.

18.  In December 2000 Plaintiff received a Disciplinary Report from his supervisor because Plaintiff had failed to meet his sales quota for November 2000.

19.  In January 2001 Plaintiff, at his own request, transferred from new car sales to used car sales.

20.  In January 2001 Defendant Ingram, the finance manager for Defendant Jeff Wyler Fairfield, Inc., denied Plaintiff a full commission on an automobile sale.

21.  In February 2001 Plaintiff received a Disciplinary Report from his supervisor because Plaintiff had failed to meet his sales quota for that month.

22.  In March 2001 Plaintiff received a Disciplinary Report from Defendant Tony Gomez for violating Wyler policies.

23.  In June 2001 Plaintiff received a Disciplinary Report from his supervisor because Plaintiff had failed to meet his sales quota for May 2001.

24.  In August 2001 Plaintiff suffered a work-related injury.

25.  Because of Plaintiff's injury, he was able to work only six hours per day.

26.  Plaintiff sold seven vehicles in August 2001.

27.  On October 6, 2001, Plaintiff received a three-day suspension for failure to attend a mandatory sales meeting.

28.  Plaintiff had a doctor's appointment on October 6, 2001, at the time of the meeting.

29.  On October 11, 2001, through his counsel, Plaintiff made claims of race-based harassment to Defendant Jeff Wyler.

30.  Plaintiff never returned to work at Wyler Fairfield after October 6, 2001.

## IV.  ISSUES OF LAW (SUBSTANTIVE)

### A. Co-worker harassment prior to January 1, 2000

Whether upon receipt of any complaint of race-based co-worker harassment from Plaintiff, Defendants took prompt, effective remedial action.

Whether Plaintiff made any complaint of race-based co-worker harassment to Defendants

*after* November 1999.

If Plaintiff made no complaints of race-based co-worker harassment to Defendants after November 1999 and there is, therefore, no continuing course of conduct with respect to coworker harassment, whether Plaintiff is entitled to recover for those incidents which occurred prior to January 1, 2000.

**B. Supervisory harassment**

Whether a finance manager, i.e., Defendant Cary Wallach and Defendant Margaret Ingram, is a supervisor

Whether Plaintiff suffered any race-based supervisory harassment.

## V.      ISSUES OF LAW (PROCEDURAL)

Whether Plaintiff has stated a claim for individual liability against any of the Defendants.

## VI.     ISSUES OF LAW (EVIDENTIARY)

Where Plaintiff is entitled to present evidence of alleged disparate treatment based on sex or based on an alleged hostile environment based on sex to support his claim of hostile environment based on race.

Such evidence is irrelevant, confusing and potentially prejudicial. Evid.R. 403

## VII.    INSTRUCTIONS AND SPECIAL VERDICT

Instructions for hostile work environment based on race by a co-worker and by a supervisor are attached hereto.

## IX.     WITNESS AND EXHIBIT LISTS

## IX.  A. DEFENDANTS' PROPOSED WITNESS LIST

Defendants set forth below the names of those witnesses they propose to call at the trial of this matter. All party witnesses have been made available to Plaintiff for deposition and the names of all non-party witnesses have been timely disclosed to Plaintiff.

**Defendant Jeff Wyler**
c/o Counsel for Defendants

Mr. Wyler will testify on his own behalf and on behalf of Defendant Jeff Wyler Fairfield, Inc., about Wyler's equal employment opportunity and anti-harassment policies and their application and enforcement; his contact with Plaintiff and/or Plaintiff's counsel, his responses to Plaintiff's complaints of race-based harassment, his approval of an outside investigator. Mr. Wyler will also testify about the overall organization of Jeff Wyler Fairfield, Inc., the nature of the jobs performed by various Defendants (e.g., Human Resources Director, Special Finance Manager, Salesperson) employed by Jeff Wyler Fairfield, Inc. Mr. Wyler will testify about the Sales Policies of Jeff Wyler Fairfield, Inc., and how these policies are enforced.

**Defendant Steve Baxla**
c/o Counsel for Defendants

Mr. Baxla will testify about Wyler's equal employment opportunity and anti-harassment policies and his role in their application and enforcement, his contacts with Plaintiff and/or Plaintiff's counsel regarding Plaintiff's complaints of race-based harassment. Mr. Baxla will testify about the duties of the positions held by various Defendants, including his own. Mr. Baxla will testify about the results of the 1999 investigation into Plaintiff's complaints of race-based harassment and any changes in Wyler policies implemented as a result of those complaints.

**Defendant Tony Gomez**
c/o Counsel for Defendants

Mr. Gomez will testify about his duties as General Sales Manager at Jeff Wyler Fairfield, Inc., the Wyler sales policies and his enforcement of them. He will testify about performance evaluations he gave to various employees, including ... He will testify about his contacts with and observations of Plaintiff as an employee of Jeff Wyler Fairfield, Inc. Mr. Gomez will testify about the training he received as a supervisor regarding Wyler's anti-harassment policies and how these policies are implemented. He will testify about any complaints of co-worker harassment he may have received from Plaintiff. He will testify about a suspension he issued to Plaintiff in 1999 when Plaintiff failed to report to work and a performance evaluation he issued to Plaintiff in 2000. Mr. Gomez will testify about the statement he gave to Felix Gora.

**Defendant Margaret Ingram**

5

c/o Counsel for Defendants

Ms. Ingram will testify about her contact with Plaintiff at Jeff Wyler Fairfield, Inc. She will describe her duties as Special Finance Manager. She will testify about an incident which occurred in January 2001 involving Plaintiff and customers involved in a special finance used-car deal. She will testify about discipline she received for being late to a mandatory sales meeting on October 6, 2001.

**Defendant Chuck Adomitis**
c/o Counsel for Defendants

Mr. Adomitis will testify about his duties as an employee of Jeff Wyler Fairfield, Inc., his performance of those duties, his understanding of the Wyler Sales policy, his training as a supervisor regarding Wyler's anti-harassment policies, his contact with Plaintiff as an employee, his understanding of Plaintiff's complaints of race-based harassment, the results of the 1999 investigation by Felix Gora. Mr. Adomitis will also testify about confronting a former Wyler employee, Bill Flynn, about making racist remarks to Plaintiff and that, as a result of the confrontation, Flynn left Wyler's employment. Mr. Adomitis will testify about the statement he gave to Felix Gora.

**Defendant Cary Wallace**
c/o Counsel for Defendants

Mr. Wallach will testify about his duties as a Special Finance Manager for Jeff Wyler Fairfield, Inc., and his performance of those duties. He will testify about his contacts with Plaintiff and his understanding of Plaintiff's complaints of race-based harassment. He will testify about any complaints of co-worker harassment he may have received from Plaintiff. Mr. Wallace will testify about the statement he gave to Felix Gora.

**Defendant Bill Adkins**
c/o Counsel for Defendants

Mr. Adkins will testify about his duties as Used Car Manager for Jeff Wyler Fairfield, Inc., the Wyler sales policies, including the mandatory sales meeting policy. Mr. Adkins will testify about his understanding of Plaintiff's work limitations after an on-the-job injury in August 2001, how he accommodated that injury. Mr. Adkins will testify about his reason for suspending Plaintiff for three days after Plaintiff failed to attend a mandatory sales meeting. Mr. Adkins will testify about other observations and contacts with Plaintiff as an employee of Jeff Wyler Fairfield, Inc. He will testify about any complaints of co-worker harassment he may have received from Plaintiff.

**Kathy Roberts**
c/o Counsel for Defendants

Ms. Roberts will testify about her duties as an employee of Defendant Wyler. She will testify about Wyler's equal employment opportunity and anti-harassment policies and her role in their application and enforcement, her contacts with Plaintiff and/or Plaintiff's counsel regarding Plaintiff's complaints of race-based harassment. Ms. Roberts will testify about her letter of September 30, 1999, encouraging Plaintiff to put his complaints in writing for action by Wyler. Ms. Roberts will testify about a meeting she had with Plaintiff in November 1999 when she reviewed Wyler's anti-harassment polices and procedures with him. Ms. Roberts will testify about the duties of the positions held by various Defendants, including her own.

**Felix Gora**
Rendigs, Fry, Kiely & Dennis, LLP
900 Fourth & Vine Tower
Five West Fourth Street
Cincinnati, Ohio 45202

Mr. Gora will testify about the investigation he conducted in 1999 into complaints of race-based harassment made by Plaintiff. He will also testify about recommendations he made to Defendants as the result of his investigation.

**John McGuire**
Current address unknown

Mr. McGuire will testify about his duties as General Sales Manager at Jeff Wyler Fairfield, Inc., the Wyler sales policies and his enforcement of them. He will testify about discipline he issued to Duncan Riddle in March 2000 and his termination of Riddle's employment in April 2001. He will testify about performance evaluations he gave to various employees, including Defendant Margaret Ingram. He will testify about his contact with and observations of Plaintiff as an employee of Jeff Wyler Fairfield, Inc. He will testify about any complaints of co-worker harassment he may have received from Plaintiff.

**Jerry Bittner**
Current address unknown

Mr. Bittner will testify about his duties as an employee of Jeff Wyler Fairfield, Inc. He will testify as Plaintiff's supervisor about his contacts with and observations of Plaintiff; Mr Bittner will testify about discipline he issued to Duncan Riddle in November 1999 regarding racial harassment of Plaintiff, about a performance evaluation he issued to Plaintiff in 1998, about disciplinary reports he issued to Plaintiff in October and November 1998, May and June 1999. Mr. Bittner will testify about the statement he gave to Felix Gora.

**Duncan Riddle**
3275 Roesch Blvd.
Fairfield, OH 45014

Mr. Riddle will testify about his duties as an employee of Jeff Wyler Fairfield, Inc., his contacts with Plaintiff, whether he engaged in race-based harassment; discipline he received from Jerry Bittner in November 1999 regarding racial harassment of Plaintiff; further discipline regarding language/attitude in March 2000 and May 2000. Mr. Riddle will testify about the statement he gave to Felix Gora.

**Larry Hall**
349 Mirabeau Street
Greenfield, OH 45123

Mr. Hall will testify about his duties as an employee of Jeff Wyler Fairfield, Inc. Mr. Hall will testify about an incident when Plaintiff failed to report to work in September 1999; he will also testify about how he handled finance matters for salespeople. Mr. Hall will testify about other observations and contacts with Plaintiff as an employee of Jeff Wyler Fairfield, Inc. He will testify about any complaints of co-worker harassment he may have received from Plaintiff. Mr. Hall will testify about the statement he gave to Felix Gora.

**Bob Ernst**
Current address unknown

Mr. Ernst will testify about his duties as an employee of Jeff Wyler Fairfield, Inc. Mr. England will testify about the incident in September 1999 when Plaintiff failed to report to work. Mr. Ernst will testify about the statement he gave to Felix Gora.

**John Heekin**
111 Heile Drive
No. 9
Cincinnati, OH 45215

Mr. Hall will testify about his duties as an employee of Jeff Wyler Fairfield, Inc. Mr. Heekin will testify about the allegations of unfair treatment made by Mr. Hearns prior to November 1999. Mr. Heekin will testify about the statement he gave to Felix Gora.

**Norman England**
137 E. Mitchell Avenue
Cincinnati, Ohio 45217

Mr. England will testify about his duties as an employee of Jeff Wyler Fairfield, Inc. Mr. England will testify about the allegations of unfair treatment made by Mr. Hearns prior to November 1999. Mr. England will testify about the statement he gave to Felix Gora.

**Tim Timmers**
5183 Cleves Warsaw
Cincinnati, Ohio 45238

Mr. Timmers will testify about his duties as an employee of Jeff Wyler Fairfield, Inc. Mr. Timmers will testify about the allegations of unfair treatment made by Mr. Hearns prior to November 1999. Mr. Timmers will testify about the statement he gave to Felix Gora.

**Jeff Dickson**
610 Dayton Street
Hamilton, Ohio 45013

Mr. Dickson will testify about his duties as an employee of Jeff Wyler Fairfield, Inc. Mr. Dickson will testify about the allegations of unfair treatment made by Mr. Hearns prior to November 1999. Mr. Dickson will testify about the statement he gave to Felix Gora.

**Paul Deardorff, Ph.D.**
c/o Counsel for Defendants

Dr. Deardorff will testify about his forensic examination of Plaintiff's alleged psychological damages. In particular, Dr. Deardorff will testify about the results of tests administered to Plaintiff that indicate malingering of symptoms.

**Plaintiff James R. Hearns, Jr.**

Plaintiff will testify about his claims of co-worker harassment based on his race and his claims of supervisor harassment based on his race. Plaintiff will testify about his alleged damages.

Defendants reserve the right to call any witness in rebuttal whose testimony can not be reasonably anticipated at this time.

## IX. B. DEFENDANTS' EXHIBIT LIST

Defendants propose to offer the following documents as exhibit in the trial of this matter. All documents listed have been provided to Plaintiff during the course of discovery or have been provided by Plaintiff during the course of discovery. Defendants stipulate to the authenticity of all documents provided by Plaintiff.

| Defendants' Exhibit No. | Description |
| --- | --- |
| 1 | Plaintiff's complete personnel file |
| 2 | New Patient Information form filled out by Plaintiff on January 24, 2002 |
| 3 | Letter dated Sep 30, 1999, from Kathy Roberts to Plaintiff regarding Plaintiff's filing a complaint |
| 4 | Letter dated October 16, 1999, from Defendant Baxla to Plaintiff's counsel regarding the investigation |
| 5 | All correspondence from Bryan Perkins to Wyler |
| 6 | 1999 investigation report by Felix Gora including all witness statements |
| 7 | EEOC Charge filed Nov 30, 2001, by Plaintiff |
| 8 | Wyler Employee policies and procedures manual |
| 9 | Wyler Sales policies and procedures manual |
| 10 | Documents from Defendant Cary Wallach's personnel file |
| 11 | Documents from Defendant Chuck Adomitis personnel file |
| 12 | Documents from Defendant Margaret Ingram's personnel file |
| 13 | Documents from Defendant Tony Gomez' personnel file |
| 14 | Documents from Defendant Bill Adkins' personnel file |
| 15 | Documents from Duncan Riddle's personnel file |

16                    Handwritten document titled "Outline of Meeting with James
                      Hearns," dated November 18, 1999

17                    Report of Paul Deardorff, Ph.D.

18                    Relevant records of Robert Simms, M.D.

                      Respectfully submitted,

                      **s/ Elizabeth Mason**
                      Elizabeth Mason, Bar Number, 0051967
                      Nichols, Speidel & Nichols
                      Attorney for Defendants
                      237 Main Street
                      Batavia, Ohio 45103
                      Telephone: (513) 732-1420 Fax 732-0357
                      E-mail: asw@fuse.net

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS**
**THE LAW DEFINING PLAINTIFF'S CLAIM**

**RACE-BASED HARASSMENT**

Title 42 United States Code §2000e-2(a) provides that:

It shall be an unlawful employment practice for an employer ... to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... race.

This statute, known as Title VII, prohibits an employer from discriminating against an employee because of that employee's race. The Ohio Revised Code §4112.02(A) also forbids discrimination against employees because of their race. The Ohio civil rights statute provides in pertinent part:

It shall be an unlawful employment practice: (A) for any employer, because of the ... race ... of any person ... to discriminate against that person with respect to ... terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

The legal test for proving race-based discrimination in employment is the same under both the federal statute and the Ohio statute.

These laws recognize race-based hostile environment harassment as a form of race discrimination. In this case, Plaintiff presents a claim for hostile environment race-based harassment under both Title VII and the Ohio statute.

12

**ESSENTIAL ELEMENTS OF PLAINTIFF'S
HOSTILE ENVIRONMENT CLAIM
RACE-BASED HARASSMENT BY A CO-WORKER**

Plaintiff asserts a claim for hostile environment race-based harassment against Defendants Jeff Wyler Fairfield, Inc., Jeffrey L. Wyler, Tony Gomez and Steve Baxla, Margaret Ingram, and Cary Wallach. Plaintiff claims that these Defendants are liable to him because they permitted co-workers to created a hostile environment based on race. To establish his race-based harassment claim alleging a hostile work environment, Plaintiff must prove, by a preponderance of evidence, that:

  1.    he was a member of a protected class; and,

  2.    he was subjected to unwelcome harassment by a co-worker;

  3.    the harassment was based on his race;

  4.    the harassment was so severe and pervasive so as to alter the terms and conditions of Plaintiff's employment and create an abusive working environment; and,

  5.    that the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take corrective action.

Unwelcome race-based harassment means conduct that is uninvited or unwanted by the victim. Hostile environment race-based harassment may include verbal or physical conduct displaying racial animus, or abusive or humiliating remarks, or conduct which is not overtly race-based but which is directed at Plaintiff because of his race. However, neither Title VII nor Ohio law is intended as a general civility code, and the ordinary tribulations of the workplace such as sporadic use of abusive language and occasional teasing are not meant to be actionable.

In order to constitute race-based harassment, the conduct complained of must be both objectively and subjectively hostile, abusive or offensive. Thus, the work environment must be one that a reasonable person in Plaintiff's position would find hostile, abusive or offensive. In addition, Plaintiff himself must have perceived the environment as hostile, abusive or offensive.

Whether an environment is hostile or abusive can be determined only be looking at all the circumstances. The question is not whether each incident complained of, standing alone, is sufficient to create a hostile work environment. Rather, you must consider whether, under the totality of the circumstances, the incidents together altered the conditions of Plaintiff's employment and created an abusive working environment. You may consider, among other factors, the following:

  1.    the frequency of the harassing conduct;

13

2.      the severity of the conduct;

3.      whether the alleged harassing conduct was physically threatening or humiliating, or a mere offensive utterance; and,

4.      whether the conduct unreasonably interfered with Plaintiff's work performance, that is, whether the harassing conduct so altered the working conditions as to make it more difficult to do the job.

In determining whether Plaintiff perceived the work environment as abusive, you may consider the effect of the harassing conduct on Plaintiff's psychological well-being.

In determining whether Defendant Jeff Wyler Fairfield, Inc., Jeffrey L. Wyler took prompt and appropriate corrective action, you may consider the following:

1.      Whether Defendants knew or should have known of the alleged harassment;

2.      Whether the response was reasonable or appropriate in relation to the frequency and severity of the alleged harassment; and,

3.      Whether the response demonstrated an attitude of indifference or unreasonableness on the part of Defendants in light of what Defendants knew or should have known at the time.

*Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 176-77, 2000-Ohio-128.

*Faragher v. City of Boca Raton* 524 U.S. 775 (1998)

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)

*Meritor Savings Bank, FSB v. Vinson,* 477 U.S 57 (1986).

## ESSENTIAL ELEMENTS OF PLAINTIFF'S
## HOSTILE ENVIRONMENT CLAIM
## RACE-BASED HARASSMENT BY A SUPERVISOR

Plaintiff asserts a claim for hostile environment race-based harassment against Defendants Jeff Wyler Fairfield, Inc., Jeffrey L. Wyler, Tony Gomez and Steve Baxla, Margaret Ingram, and Cary Wallach as supervisors for their own conduct in creating a hostile work environment based on race. To establish his race-based harassment claim alleging a hostile work environment, Plaintiff must prove, by a preponderance of evidence, that:

1.    he was a member of a protected class; and,

2.    he was subjected to unwelcome harassment by a supervisor;

3.    the harassment was based on his race;

4.    the harassment was so severe and pervasive so as to alter the terms and conditions of Plaintiff's employment and create an abusive working environment; and,

Unwelcome race-based harassment means conduct that is uninvited or unwanted by the victim. Hostile environment race-based harassment may include verbal or physical conduct displaying racial animus, or abusive or humiliating remarks, or conduct which is not overtly race-based but which is directed at Plaintiff because of his race. However, neither Title VII nor Ohio law is intended as a general civility code, and the ordinary tribulations of the workplace such as sporadic use of abusive language and occasional teasing are not meant to be actionable.

In order to constitute race-based harassment, the conduct complained of must be both objectively and subjectively hostile, abusive or offensive. Thus, the work environment must be one that a reasonable person in Plaintiff's position would find hostile, abusive or offensive. In addition, Plaintiff himself must have perceived the environment as hostile, abusive or offensive.

Whether an environment is hostile or abusive can be determined only be looking at all the circumstances. The question is not whether each incident complained of, standing alone, is sufficient to create a hostile work environment. Rather, you must consider whether, under the totality of the circumstances, the incidents together altered the conditions of Plaintiff's employment and created an abusive working environment. You may consider, among other factors, the following:

1.    the frequency of the harassing conduct;

2.    the severity of the conduct;

3.    whether the alleged harassing conduct was physically threatening or humiliating,

15

or a mere offensive utterance; and,

4.      whether the conduct unreasonably interfered with Plaintiff's work performance, that is, whether the harassing conduct so altered the working conditions as to make it more difficult to do the job.

In determining whether Plaintiff perceived the work environment as abusive, you may consider the effect of the harassing conduct on Plaintiff's psychological well-being.

*Faragher v. City of Boca Raton* 524 U.S. 775 (1998)

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)

*Meritor Savings Bank, FSB v. Vinson,* 477 U.S 57 (1986).

## INTERROGATORY NO. 1
## CO-WORKER HARASSMENT

To find Defendants liable to Plaintiff for the conduct of his coworkers you must find, first, that Plaintiff was subjected to repeated unwelcome conduct of based on his race. You must next consider whether Defendants knew or should have known of the conduct and whether Defendants took prompt and appropriate corrective action to halt the conduct.

**Question A**. Was Plaintiff subjected to race-based harassment by a co-worker?

_____ Yes, Plaintiff was subjected to race-based harassment by a co-worker.

_____ No, Plaintiff was not subjected to race-based harassment by a co-worker.

If you answered "yes," to Question A, go to Question B.

If you answered "no," to Question A, then go to Interrogatory No. 2.

**Question B.** Did Plaintiff's supervisors take prompt and appropriate corrective action to halt the harassment?

_____ Yes, Defendants took prompt and appropriate action to halt the harassment.

_____ No, Defendants failed to take prompt and appropriate action to halt the harassment.

If you answered "yes," to Question B, you must find in favor of Defendants with respect to Plaintiff's claim of co-worker harassment.

If you answered "no," to Question A, then you must go to Question C.

**Question C**. Has Plaintiff proved that he was damaged by the Defendants?

___ No, Plaintiff has failed to prove that he was damaged.

___ Yes, Plaintiff has proved that he was damaged.

If you checked, "No," Plaintiff has failed to prove that he was damaged by Defendants,

17

you must find in favor of Defendants.

     If you checked "Yes," you may award damages to Plaintiff.

**INTERROGATORY NO. 2**

**SUPERVISORY HARASSMENT**


To find Defendants liable to Plaintiff for supervisory harassment you must find, first, that Plaintiff's supervisors subjected him to repeated unwelcome conduct of based on his race.

**Question A**. Was Plaintiff subjected to race-based harassment by a supervisor?

_____ No, Plaintiff was not subjected to race-based harassment by a supervisor.

_____ Yes, Plaintiff was subjected to race-based harassment by a supervisor.

If you answered "yes," to Question A, then you must find in favor of Defendants.

If you answered "no," to Question A, then go to Question B.

**Question B**. Has Plaintiff proved that he was damaged by the Defendants?

____ No, Plaintiff has failed to prove that he was damaged.

____ Yes, Plaintiff has proved that he was damaged.

If you checked, "No," Plaintiff has failed to prove that he was damaged by Defendants, you must find in favor of Defendants.

If you checked "Yes," you may award damages to Plaintiff.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2006, I electronically filed the foregoing with the

Clerk of Courts using the CM/ECF system which will send notification of such filing to Bryan

Perkins, Esq., attorney for Plaintiff, 119 E. Court Street, Suite 314, Cincinnati, Ohio 45202.

**s/ Elizabeth Mason**

Elizabeth Mason Bar Number, 0051967
Attorney for Defendants
Nichols, Speidel & Nichols
237 Main Street
Batavia, Ohio 45103
Telephone: (513) 732-1420
E-mail: asw@fuse.net