**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JAMES HEARNS, JR., | * | Case No. 1:02CV496 |
| Plaintiff, | * | Judge Bertlesman |
| vs. | * | |
| JEFF WYLER FAIRFIELD, INC.,<br>*et al.*, | * | **PLAINTIFF'S**<br>**PROPOSED PRETRIAL**<br>**STATEMENT** |
| | * | |
| Defendants. | | |

Now comes, Plaintiff James Hearns, Jr., by and through his undersigned counsel, and

hereby submits the following proposed pre-trial statement.

## I.    JURISDICTION

The jurisdiction of the court is invoked under Title 42, United States Code, §2000e.

## II.    KIND OF ACTION

This is an action for employment discrimination. Plaintiff asserts two claims. First, that he was the victim of a hostile work environment because of his race. Second, that he was retaliated against when he engaged in activity protected by Title VII.

## III.    STATEMENT OF FACTS

Plaintiff stipulates to the following facts:

1.  Plaintiff is an African-American male.

2.  Plaintiff was employed as an automobile salesman by Defendant Jeff Wyler Fairfield, Inc., from June 1996 through April 2002.

3.  Some of the salary history information set forth on Plaintiff's employment application is misstated. (Plaintiff admits but denies relevance)

4.  Defendant Jeff Wyler Fairfield, Inc., is a corporation organized for the purpose of selling new Cadillac and Oldsmobile vehicles and used vehicles in Fairfield, Ohio.

5.  Defendant Jeffrey L. Wyler is President and Chief Executive Officer of Jeff Wyler Fairfield, Inc.

6.  Defendant Steve Baxla was, at all times relevant to this litigation, employed by Defendant Jeff Wyler Fairfield, Inc., as the Human Resources Director.

7.  Defendant Tony Gomez was, at all times relevant to this litigation, employed in a supervisory position by Defendant Jeff Wyler Fairfield, Inc.

8.  Defendant Margaret Ingram was, at all times relevant to this litigation, employed as a finance

manager by Defendant Jeff Wyler Fairfield, Inc.

9.   Defendant Chuck Adomitis was employed by Defendant Jeff Wyler Fairfield, Inc., in a supervisory position through November 1999.

10. Defendant Cary Wallach was employed as a finance manager by Defendant Jeff Wyler Fairfield, Inc., through October 2000.

11. Defendants Duncan Riddle and Bill Adkins were co-workers of Plaintiff, and had no supervisory powers.

12. By letter dated September 30, 1999, Plaintiff, through his attorney, complained to Jeff Wyler that he had been the victim of race-based discriminatory remarks, conduct, and retaliation by two co-workers, Duncan Riddle and Bill Adkins, and two supervisors Tony Gomez and Cary Wallach.

13. Immediately thereafter, Defendant Jeff Wyler Fairfield, Inc., paid for an outside firm to perform an investigation of Plaintiff's claims.

14. By letter dated October 18, 1999, Plaintiff's counsel acknowledged the assignment of the investigator and offered Plaintiff's full cooperation.

15. In November 1999, at the conclusion of Wyler's investigation into Plaintiff's complaints, the Human Resources Director for Defendant Jeff Wyler Fairfield, Kathy Roberts, met with Plaintiff to review the results of Wyler's investigation.

16. As a result of the findings of Defendant Jeff Wyler Fairfield, Inc.'s investigation,  Duncan Riddle, Cary Wallach and Tony Gomez was reprimanded.

17. Defendant Adomitis was discharged from employment in November 1999.

18. In August 2000 Plaintiff received a Disciplinary Report from his supervisor because Plaintiff had failed to meet his sales quota for July 2000.

19. In December 2000 Plaintiff received a Disciplinary Report from his supervisor because Plaintiff had failed to meet his sales quota for November 2000.

20.  In January 2001 Plaintiff, at his own request, transferred from new car sales to used car sales.

21.  In January 2001 Defendant Ingram, the finance manager for Defendant Jeff Wyler Fairfield, Inc., denied Plaintiff a full commission on an automobile sale.

22.  In February 2001 Plaintiff received a Disciplinary Report from his supervisor because Plaintiff had failed to meet his sales quota for that month.

23.  In March 2001 Plaintiff received a Disciplinary Report from Defendant Tony Gomez for allegedly violating Wyler policies.

24.  In June 2001 Plaintiff received a Disciplinary Report from his supervisor because Plaintiff had failed to meet his sales quota for May 2001.

25.  In August 2001 Plaintiff suffered a work-related injury.

26.  Because of Plaintiff's injury, he was able to work only six hours per day.

27.  Plaintiff sold seven vehicles in August 2001.

28.  On October 6, 2001, Plaintiff received a three-day suspension ostensibly for failure to attend a mandatory sales meeting.

29.  Plaintiff had a doctor's appointment on October 6, 2001, at the time of the meeting. Plaintiff also had a written doctor's excuse for his absence.

30.  On October 11, 2001, October 19, 2001, and November 8, 2001, through his counsel, Plaintiff renewed his claims of race-based harassment to Defendant Jeff Wyler, and complained about some instances of racial discrimination that had continued even after the investigation.

31.  Plaintiff's last day that he worked at Wyler Fairfield was October 6, 2001.

## IV.  ISSUES OF LAW (SUBSTANTIVE)

### A. Co-worker harassment prior to January 1, 2000

Whether upon receipt of any complaint of race-based co-worker harassment from Plaintiff, Defendants took prompt, effective remedial action.

Whether Plaintiff made any complaint of race-based co-worker harassment or retaliation to Defendants *after* November 1999.

If Plaintiff made no complaints of race-based co-worker harassment to Defendants after November 1999 and there is, therefore, no continuing course of conduct with respect to coworker harassment, whether Plaintiff is entitled to recover for those incidents which occurred prior to January 1, 2000.

### B. Supervisory harassment

Whether a finance manager, i.e., Defendant Cary Wallach and Defendant Margaret Ingram, is a supervisor

Whether Plaintiff suffered any race-based supervisory harassment after November 1999.

## V.    ISSUES OF LAW (PROCEDURAL)

Whether Defendants Jeff Wyler Fairfield, Inc., and Jeffrey L. Wyler can be held liable for misconduct of Defendant Chuck Adomitis.

Whether Defendant Chuck Adomitis is a proper party to this litigation.

## VI.   ISSUES OF LAW (EVIDENTIARY)

Where Plaintiff is entitled to present evidence of alleged disparate treatment based on sex or based on an alleged hostile environment based on sex to support his claim of hostile environment based on race.

Such evidence is relevant to Plaintiff's claim, as it involved the manner in which a white supervisor was

punished (no discipline) for such conduct versus the manner a black employee was punished (immediately terminated). Disparate treatment between white and black employees is clearly relevant to a claim of racial discrimination.

## VII.    INSTRUCTIONS AND SPECIAL VERDICT

Instructions for hostile work environment based on race by a co-worker and by a supervisor , and retaliation, are attached hereto.

### THE LAW DEFINING PLAINTIFF'S CLAIM

### RACE-BASED HARASSMENT

Title 42 United States Code §2000e-2(a) provides that:

It shall be an unlawful employment practice for an employer ... to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... race.

This statute, known as Title VII, prohibits an employer from discriminating against an employee because of that employee's race. The Ohio Revised Code §4112.02(A) also forbids discrimination against employees because of their race. The Ohio civil rights statute provides in pertinent part:

It shall be an unlawful employment practice: (A) for any employer, because of the ... race ... of any person ... to discriminate against that person with respect to ... terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

The legal test for proving race-based discrimination in employment is the same under both the federal statute and the Ohio statute.

These laws recognize race-based hostile environment harassment as a form of race discrimination. In this case, Plaintiff presents a claim for hostile environment race-based harassment under both Title VII and the Ohio statute.

### ESSENTIAL ELEMENTS OF PLAINTIFF'S
### HOSTILE ENVIRONMENT CLAIM
### RACE-BASED HARASSMENT BY A CO-WORKER

Plaintiff asserts a claim for hostile environment race-based harassment against Defendants Jeff Wyler Fairfield, Inc., Jeffrey L. Wyler, Tony Gomez and Steve Baxla, Margaret Ingram, Duncan Riddle, Bull Adkins, and Cary Wallach. Plaintiff claims that these Defendants are liable to him because they permitted co-workers to created a hostile environment based on race. To establish his race-based harassment claim alleging a hostile work environment, Plaintiff must prove, by a preponderance of evidence, that:

1.    he was a member of a protected class; and,

2.    he was subjected to unwelcome harassment by a co-worker;

3.    the harassment was based on his race;

4.    the harassment was so severe and pervasive so as to alter the terms and conditions of Plaintiff's employment and create an abusive working environment; and,

5.      that the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take corrective action.

Unwelcome race-based harassment means conduct that is uninvited or unwanted by the victim. Hostile environment race-based harassment may include verbal or physical conduct displaying racial animus, or abusive or humiliating remarks, or conduct which is not overtly race-based but which is directed at Plaintiff because of his race. However, neither Title VII nor Ohio law is intended as a general civility code, and the ordinary tribulations of the workplace such as sporadic use of abusive language and occasional teasing are not meant to be actionable.

In order to constitute race-based harassment, the conduct complained of must be both objectively and subjectively hostile, abusive or offensive. Thus, the work environment must be one that a reasonable person in Plaintiff's position would find hostile, abusive or offensive. In addition, Plaintiff himself must have perceived the environment as hostile, abusive or offensive.

Whether an environment is hostile or abusive can be determined only be looking at all the circumstances. The question is not whether each incident complained of, standing alone, is sufficient to create a hostile work environment. Rather, you must consider whether, under the totality of the circumstances, the incidents together altered the conditions of Plaintiff's employment and created an abusive working environment. You may consider, among other factors, the following:

1.      the frequency of the harassing conduct;

2.      the severity of the conduct;

3.      whether the alleged harassing conduct was physically threatening or humiliating, or a mere offensive utterance; and,

4.      whether the conduct unreasonably interfered with Plaintiff's work performance, that is, whether the harassing conduct so altered the working conditions as to make it more difficult to do the job.

In determining whether Plaintiff perceived the work environment as abusive, you may consider the effect of the harassing conduct on Plaintiff's psychological well-being.

In determining whether Defendant Jeff Wyler Fairfield, Inc., Jeffrey L. Wyler took prompt and appropriate corrective action, you may consider the following:

1.      Whether Defendants knew or should have known of the alleged harassment;

2.      Whether the response was reasonable or appropriate in relation to the frequency and severity of the alleged harassment; and,

3.      Whether the response demonstrated an attitude of indifference or unreasonableness on the part of Defendants in light of what Defendants knew or should have known at the time.

*Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 176-77, 2000-Ohio-128.

*Faragher v. City of Boca Raton* 524 U.S. 775 (1998)

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)

*Meritor Savings Bank, FSB v. Vinson,* 477 U.S 57 (1986).

**ESSENTIAL ELEMENTS OF PLAINTIFF'S
HOSTILE ENVIRONMENT CLAIM
RACE-BASED HARASSMENT BY A SUPERVISOR**

Plaintiff asserts a claim for hostile environment race-based harassment against Defendants Jeff Wyler Fairfield, Inc., Jeffrey L. Wyler, Tony Gomez and Steve Baxla, Margaret Ingram, and Cary Wallach as supervisors for their own conduct in creating a hostile work environment based on race. To establish his race-based harassment claim alleging a hostile work environment, Plaintiff must prove, by a preponderance of evidence, that:

1.    he was a member of a protected class; and,

2.    he was subjected to unwelcome harassment by a supervisor;

3.    the harassment was based on his race;

4.    the harassment was so severe and pervasive so as to alter the terms and conditions of Plaintiff's employment and create an abusive working environment; and,

Unwelcome race-based harassment means conduct that is uninvited or unwanted by the victim. Hostile environment race-based harassment may include verbal or physical conduct displaying racial animus, or abusive or humiliating remarks, or conduct which is not overtly race-based but which is directed at Plaintiff because of his race. However, neither Title VII nor Ohio law is intended as a general civility code, and the ordinary tribulations of the workplace such as sporadic use of abusive language and occasional teasing are not meant to be actionable.

In order to constitute race-based harassment, the conduct complained of must be both objectively and subjectively hostile, abusive or offensive. Thus, the work environment must be one that a reasonable person in Plaintiff's position would find hostile, abusive or offensive. In addition, Plaintiff himself must have perceived the environment as hostile, abusive or offensive.

Whether an environment is hostile or abusive can be determined only be looking at all the circumstances. The question is not whether each incident complained of, standing alone, is sufficient to create a hostile work environment. Rather, you must consider whether, under the totality of the circumstances, the incidents together altered the conditions of Plaintiff's employment and created an abusive working environment. You may consider, among other factors, the following:

1.    the frequency of the harassing conduct;

2.    the severity of the conduct;

3.    whether the alleged harassing conduct was physically threatening or humiliating, or a mere offensive utterance; and,

4.      whether the conduct unreasonably interfered with Plaintiff's work performance, that is, whether the harassing conduct so altered the working conditions as to make it more difficult to do the job.

In determining whether Plaintiff perceived the work environment as abusive, you may consider the effect of the harassing conduct on Plaintiff's psychological well-being.

*Faragher v. City of Boca Raton* 524 U.S. 775 (1998)

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)

*Meritor Savings Bank, FSB v. Vinson,* 477 U.S 57 (1986).

## ESSENTIAL ELEMENTS OF PLAINTIFF'S
## RETALIATION CLAIM

Plaintiff asserts a claim for retaliation against Defendants Jeff Wyler Fairfield, Inc., Jeffrey L. Wyler, Tony Gomez and Steve Baxla, Margaret Ingram, and Cary Wallach.

42 USCS § 2000e-3 prohibits an employer from engaging in:

Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.  It shall be an
Unlawful employment practice for an employer to discriminate
against any of his employees  *  *  *  because he has
opposed any practice made an unlawful practice by this title
[42 USCS § § 2000e-2000e-17], or because he has made a charge, testified, assisted or participated in any manner in an
investigation, proceeding, or hearing under this title [42 USCS § § 2000e-2000e-17].

To establish his retaliation, Plaintiff must prove, by a preponderance of evidence, that:

1.   he engaged in activity protected by Title VII;

2.   this exercise of protected rights was known to defendant;

3.   defendant thereafter took adverse employment action; and,

4.      there was a causal connection between the protected activity and the adverse employment action.

**INTERROGATORY NO. 1**
**CO-WORKER HARASSMENT**

To find Defendants liable to Plaintiff for the conduct of his coworkers you must find, first, that Plaintiff was subjected to repeated unwelcome conduct of based on his race. You must next consider whether Defendants knew or should have known of the conduct and whether Defendants took prompt and appropriate corrective action to halt the conduct.

**Question A**. Was Plaintiff subjected to race-based harassment by a co-worker?

_____ Yes, Plaintiff was subjected to race-based harassment by a co-worker.

_____ No, Plaintiff was not subjected to race-based harassment by a co-worker.

If you answered "yes," to Question A, go to Question B.

If you answered "no," to Question A, then go to Interrogatory No. 2.

**Question B.** Did Plaintiff's supervisors take prompt and appropriate corrective action to halt the harassment?

_____ Yes, Defendants took prompt and appropriate action to halt the harassment.

_____ No, Defendants failed to take prompt and appropriate action to halt the harassment.

If you answered "yes," to Question B, you must find in favor of Defendants with respect to Plaintiff's claim of co-worker harassment.

If you answered "no," to Question A, then you must go to Question C.

**Question C**. Has Plaintiff proved that he was damaged by the Defendants?

___ No, Plaintiff has failed to prove that he was damaged.

___ Yes, Plaintiff has proved that he was damaged.

If you checked, "No," Plaintiff has failed to prove that he was damaged by Defendants, you must find in favor of Defendants.
If you checked "Yes," you may award damages to Plaintiff.

**INTERROGATORY NO. 2**

**SUPERVISORY HARASSMENT**

To find Defendants liable to Plaintiff for supervisory harassment you must find, first, that  Plaintiff's supervisors subjected him to repeated unwelcome conduct of based on his race.    **Question A**. Was Plaintiff subjected to race-based harassment by a supervisor?

_____ No, Plaintiff was not subjected to race-based harassment by a supervisor.

_____ Yes, Plaintiff was subjected to race-based harassment by a supervisor.

If you answered "yes," to Question A, then you must find in favor of Defendants.

If you answered "no," to Question A, then go to Question B.

**Question B**. Has Plaintiff proved that he was damaged by the Defendants?

___ No, Plaintiff has failed to prove that he was damaged.

___ Yes, Plaintiff has proved that he was damaged.

If you checked, "No," Plaintiff has failed to prove that he was damaged by Defendants, you must find in favor of Defendants.

If you checked "Yes," you may award damages to Plaintiff.

**INTERROGATORY NO. 3**

**RETALIATION**

To find Defendants liable to Plaintiff for retaliation you must find, he engaged in activity protected by Title VII and that Defendants retaliated against Plaintiff by taking adverse employment against him.

**Question A**. Did Defendant retaliate against Plaintiff for engaging in activity protected by Title VII?

_____ No, Plaintiff was not subjected to retaliation by a supervisor.

_____ Yes, Plaintiff was subjected to retaliation by a supervisor.

If you answered "yes," to Question A, then you must find in favor of Defendants.

If you answered "no," to Question A, then go to Question B.

**Question B**. Has Plaintiff proved that he was damaged by the Defendants?

_____ No, Plaintiff has failed to prove that he was damaged.

_____ Yes, Plaintiff has proved that he was damaged.

If you checked, "No," Plaintiff has failed to prove that he was damaged by Defendants, you must find in favor of Defendants.

If you checked "Yes," you may award damages to Plaintiff.